**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

WILLIAM TOLLEY, et al.,

                 Plaintiffs,

v.                                                    CIVIL ACTION NO.  3:08-cv-01305

MONSANTO COMPANY, et al.,

                 Defendants.

---

MARY LOU BREWER,

                 Plaintiff,

v.                                                    CIVIL ACTION NO.  3:08-cv-01306

MONSANTO COMPANY, et al.,

                 Defendants.

---

EVERETTE HEDRICK,

                 Plaintiff,

v.                                                    CIVIL ACTION NO.  3:08-cv-01307

MONSANTO COMPANY, et al.,

                 Defendants.

---

CHRIS MORRIS,

                 Plaintiffs,

v.                                                    CIVIL ACTION NO.  3:08-cv-01308

MONSANTO COMPANY, et al.,

                 Defendants.

---

ROBERT HEDRICK,

                      Plaintiff,

v.                                 CIVIL ACTION NO.  3:08-cv-01309

MONSANTO COMPANY, et al.,

                      Defendants.

---

SANDRA PARRI,

                      Plaintiff,

v.                                 CIVIL ACTION NO.  3:08-cv-01310

MONSANTO COMPANY, et al.,

                      Defendants.

---

MARY HEDRICK,

                      Plaintiff,

v.                                 CIVIL ACTION NO.  3:08-cv-01311

MONSANTO COMPANY, et al.,

                      Defendants.

---

CLAUDE PAULEY,

                      Plaintiff,

v.                                 CIVIL ACTION NO.  3:08-cv-01312

MONSANTO COMPANY, et al.,

                      Defendants.

---

LESLIE JACKSON,

                Plaintiff,

v.                                   CIVIL ACTION NO.  3:08-cv-01313

MONSANTO COMPANY, et al.,

                Defendants.

---

ROBERTA JENKINS,

                Plaintiff,

v.                                   CIVIL ACTION NO.  3:08-cv-01314

MONSANTO COMPANY, et al.,

                Defendants.

---

KENNETH PHILLIPS,

                Plaintiff,

v.                                   CIVIL ACTION NO.  3:08-cv-01315

MONSANTO COMPANY, et al.,

                Defendants.

---

MAGGIE CONNER,

                Plaintiff,

v.                                   CIVIL ACTION NO.  3:08-cv-01316

MONSANTO COMPANY, et al.,

                Defendants.

---

RUBEN JOHNSON,

                    Plaintiff,

v.                                        CIVIL ACTION NO.  3:08-cv-01317

MONSANTO COMPANY, et al.,

                    Defendants.

---

ARLEN BAILEY,

                    Plaintiff,

v.                                        CIVIL ACTION NO.  3:08-cv-01318

MONSANTO COMPANY, et al.,

                    Defendants.

---

GORDON POTTORFF,

                    Plaintiff,

v.                                        CIVIL ACTION NO.  3:08-cv-01319

MONSANTO COMPANY, et al.,

                    Defendants.

---

WILLIAM BAILEY,

                    Plaintiff,

v.                                      CIVIL ACTION NO.  3:08-cv-01320

MONSANTO COMPANY, et al.,

                    Defendants.

-4-

---

FERRIEL CRAIGO,

                          Plaintiff,

v.                                           CIVIL ACTION NO.  3:08-cv-01321

MONSANTO COMPANY, et al.,

                          Defendants.

---

JAMES RANDOLPH,

                          Plaintiff,

v.                                           CIVIL ACTION NO.  3:08-cv-01322

MONSANTO COMPANY, et al.,

                          Defendants.

---

LEONARD LETT,

                          Plaintiff,

v.                                       CIVIL ACTION NO.  3:08-cv-01323

MONSANTO COMPANY, et al.,

                          Defendants.

---

HERMAN BARTLETT,

                          Plaintiff,

v.                                       CIVIL ACTION NO.  3:08-cv-01324

MONSANTO COMPANY, et al.,

                          Defendants.

---

DONALD RAYNES,

                    Plaintiff,

v.                                    CIVIL ACTION NO.  3:08-cv-01325

MONSANTO COMPANY, et al.,

                    Defendants.

---

ROBERT CREMERING,

                    Plaintiff,

v.                                    CIVIL ACTION NO.  3:08-cv-01326

MONSANTO COMPANY, et al.,

                    Defendants.

---

WALTER LOVELESS,

                    Plaintiff,

v.                                    CIVIL ACTION NO.  3:08-cv-01327

MONSANTO COMPANY, et al.,

                    Defendants.

---

CURTIS BLACKSHIRE,

                    Plaintiff,

v.                                    CIVIL ACTION NO.  3:08-cv-01328

MONSANTO COMPANY, et al.,

                    Defendants.

---

STANLEY FARLEY,

                Plaintiff,

v.                                                   CIVIL ACTION NO.  3:08-cv-01329

MONSANTO COMPANY, et al.,

                Defendants.

---

VIRGINIA BOARD,

                Plaintiff,

v.                                                   CIVIL ACTION NO.  3:08-cv-01330

MONSANTO COMPANY, et al.,

                Defendants.

---

MARY REUSCH,

                Plaintiff,

v.                                               CIVIL ACTION NO.  3:08-cv-01331

MONSANTO COMPANY, et al.,

                Defendants.

---

ELLEN MANN,

                Plaintiff,

v.                                               CIVIL ACTION NO.  3:08-cv-01332

MONSANTO COMPANY, et al.,

                Defendants.

---

LLOYD BOGGESS,

                        Plaintiff,

v.                                       CIVIL ACTION NO.  3:08-cv-01333

MONSANTO COMPANY, et al.,

                        Defendants.

---

OLIN MCCLANAHAN,

                        Plaintiff,

v.                                         CIVIL ACTION NO.  3:08-cv-01334

MONSANTO COMPANY, et al.,

                        Defendants.

---

GARY FISHER,

                        Plaintiff,

v.                                         CIVIL ACTION NO.  3:08-cv-01335

MONSANTO COMPANY, et al.,

                        Defendants.

---

RALPH SCARBERRY,

                        Plaintiff,

v.                                         CIVIL ACTION NO.  3:08-cv-01336

MONSANTO COMPANY, et al.,

                        Defendants.

---

MARGARET FRAZIER,

                    Plaintiff,

v.                                          CIVIL ACTION NO.  3:08-cv-01337

MONSANTO COMPANY, et al.,

                    Defendants.

---

JAMES BONNETT,

                    Plaintiff,

v.                                          CIVIL ACTION NO.  3:08-cv-01338

MONSANTO COMPANY, et al.,

                    Defendants.

---

JANICE SCOTT,

                    Plaintiff,

v.                                          CIVIL ACTION NO.  3:08-cv-01339

MONSANTO COMPANY, et al.,

                    Defendants.

---

RANDY SMITH,

                      Plaintiff,

v.                                        CIVIL ACTION NO.  3:08-cv-01340

MONSANTO COMPANY, et al.,

                    Defendants.

STEPHEN GILLISPIE,

                Plaintiff,

v.                                CIVIL ACTION NO.  3:08-cv-01341

MONSANTO COMPANY, et al.,

                Defendants.

RALPH TURLEY,

                Plaintiff,

v.                                CIVIL ACTION NO.  3:08-cv-01342

MONSANTO COMPANY, et al.,

                Defendants.

STERLING SMITH,

                Plaintiff,

v.                                CIVIL ACTION NO.  3:08-cv-01343

MONSANTO COMPANY, et al.,

                Defendants.

TERRY BRADSHAW,

                Plaintiff,

v.                                CIVIL ACTION NO.  3:08-cv-01344

MONSANTO COMPANY, et al.,

                Defendants.

---

DENCIL HARRISON,

        Plaintiff,

v.                                CIVIL ACTION NO.  3:08-cv-01345

MONSANTO COMPANY, et al.,

        Defendants.

---

GALE SUMMERS,

        Plaintiff,

v.                                CIVIL ACTION NO.  3:08-cv-01346

MONSANTO COMPANY, et al.,

        Defendants.

---

JAMES TOTTEN, SR.,

        Plaintiff,

v.                                CIVIL ACTION NO.  3:08-cv-01347

MONSANTO COMPANY, et al.,

        Defendants.

---

DELBERT HAWLEY,

        Plaintiff,

v.                                CIVIL ACTION NO.  3:08-cv-01348

MONSANTO COMPANY, et al.,

        Defendants.

HARVEY BRIGHTWELL,

                      Plaintiff,

v.                               CIVIL ACTION NO.  3:08-cv-01349

MONSANTO COMPANY, et al.,

                      Defendants.

---

TAMMY CHANCEY,

                      Plaintiff,

v.                               CIVIL ACTION NO.  3:08-cv-01350

MONSANTO COMPANY, et al.,

                      Defendants.

---

LINDA TURLEY-FRANEZAK,

                      Plaintiff,

v.                               CIVIL ACTION NO.  3:08-cv-01351

MONSANTO COMPANY, et al.,

                      Defendants.

---

MARY WARD,

                      Plaintiff,

v.                               CIVIL ACTION NO.  3:08-cv-01352

MONSANTO COMPANY, et al.,

                      Defendants.

---

DEVAE WILLIAMS,

                Plaintiff,

v.                                   CIVIL ACTION NO.  3:08-cv-01353

MONSANTO COMPANY, et al.,

                Defendants.

---

JACK WOODALL,

                Plaintiff,

v.                                   CIVIL ACTION NO.  3:08-cv-01354

MONSANTO COMPANY, et al.,

                Defendants.

---

GAYNELLE TYREE,

                Plaintiff,

v.                                   CIVIL ACTION NO.  3:08-cv-01355

MONSANTO COMPANY, et al.,

                Defendants.

---

KEITH WITHROW,

                Plaintiff,

v.                                   CIVIL ACTION NO.  3:08-cv-01356

MONSANTO COMPANY, et al.,

                Defendants.

-13-

_____

LEWIS FARMER,

                        Plaintiff,

v.                                            CIVIL ACTION NO.  3:08-cv-01357

MONSANTO COMPANY, et al.,

                        Defendants.
_____

ZINA G. BIBB,

                        Plaintiff,

v.                                            CIVIL ACTION NO.  3:08-cv-01358

MONSANTO COMPANY, et al.,

                        Defendants.
_____

ROBERT C. CARTER,

                        Plaintiff,

v.                                            CIVIL ACTION NO.  3:08-cv-01359

MONSANTO COMPANY, et al.,

                        Defendants.

**ORDER**

    Pending before the court are the defendants' Letter-Form Motion to Stay Proceedings

[Docket 6],[1] the Plaintiffs[2] Motion to Stay Transfer of this Case and Other "Parallel Litigations"

_____

    [1]    Unless otherwise noted, filings and documents referenced in this Order are from
*Carter et al. v. Monsanto Co. et al.*, No. 3:08-cv-01359.  The same documents have been filed in all
of the above-styled cases.

    [2]    I will refer to all of the plaintiffs in the above-styled cases as "Plaintiffs" throughout
                                                                    (continued...)

-14-

Pending the Court's Consideration of Plaintiffs' Motion to Remand [Docket 7], and the Plaintiffs'

Motion to Remand  Due to Untimely Removal and to Recover Costs and Attorneys Fees [Docket

9].  For the reasons discussed herein, the Letter-Form Motion to Stay Proceedings is **DENIED**, the

Motion to Stay Transfer of this Case is **DENIED as moot**, and the Motion to Remand is

**GRANTED in part** and **DENIED in part**.

**I. Factual and Procedural Background**

The above-styled cases are parallel personal injury actions (collectively, the "Parallel

Litigations")[3] seeking damages based on Defendant Monsanto's alleged release of the agricultural

herbicide 2, 4, 5-trichlorophenoxyacetic acid ("2, 4, 5-T") and toxic byproducts from its chemical

plant in Nitro, West Virginia (the "Nitro Plant").  Defendant Monsanto[4] began producing 2, 4, 5-T

at the Nitro Plant in 1948 and continued producing the herbicide until about 1971.  During the

Vietnam War, Defendant Monsanto sold herbicide 2, 4, 5-T to the federal government to be used

as a primary active component of the military herbicide Agent Orange.  (Notice Removal, Ex. A,

Corrected Fourth Am. Compl. ¶ 7.)  The production of 2, 4, 5-T, however, results in the formation

of a toxic byproduct called 2, 3, 7, 8-tetracholorodibenzoparadioxin, or "dioxin," and also dibenzo

---

[2](...continued)
this order.  Further, because the Plaintiffs filed the same motions, I will credit them collectively for
their allegations and arguments.  I will distinguish cases and parties when necessary.

[3]     The Parallel Litigations are made up of two class action lawsuits and fifty-three
individual cases.  (Letter to District Court Judge, Tab A [Docket 6].)  The plaintiffs in all of the
Parallel Litigations are represented by the same counsel, and the same three motions are pending in
all of the cases and raise the same issues.  Accordingly, this Order will apply to all of the above-
styled cases.

[4]     The other defendants in the Parallel Litigations have been sued as owners and
operators of the Nitro Plant, or as successors to the liabilities of companies that owned or operated
the plant during the relevant time period.

furans (collectively "dioxins/furans").   (Notice Removal, Ex. 1, Class Action Compl. ¶ 2, *Bibb et al. v. Monsanto Co. et al.*, No. 3:08-cv-01358 (S.D. W. Va. filed Nov. 21, 2008).)  The production of 2, 4, 5-T, and the resulting production of dioxins/furans, allegedly caused injury not only to Monsanto workers involved in the production process, but also persons living near the Nitro Plant and dioxin/furan waste disposal sites.  (Notice Removal, Ex. A, Corrected Fourth Am. Compl. ¶ 8-21.)

The Plaintiffs seek damages for injuries caused by exposure to dioxins/furans produced during the 2, 4, 5-T manufacturing process at the Nitro Plant.  The Parallel Litigations include two class actions:  *Carter et al. v. Monsanto Co. et al.*, No. 3:08-cv-1359 (hereinafter "*Carter*") and *Bibb et al. v. Monsanto Co. et al.*, No. 3:08-cv-1358 (hereinafter "*Bibb*").  *Carter* and *Bibb* were filed in the Circuit Court of Putnam County, West Virginia in August 2000 and December 2004, respectively.  (Notice of Removal 1; *Bibb* Notice of Removal 1; [Docket 1].)  On January 7, 2008, the Circuit Court entered orders certifying classes in both cases.  (Notice of Removal, Ex. 2; *Bibb* Notice of Removal, Ex. 3.)  The Parallel Litigations also include fifty-three individual actions (hereinafter, "the Individual Litigations") which were filed in the Circuit Court of Putnam County on October 1, 2007.  In all but two of the Individual Litigations, the individual plaintiffs filed amended complaints on January 24, 2008.[5]

On November 21, 2008, the defendants removed the Parallel Litigations to this court pursuant to 28 U.S.C. §§ 1442(a)(1) and 1331.  Section 1442 allows the removal of any state action against federal officers acting "under color of such office" to federal district court.  28 U.S.C. §

---

[5]     The two cases in which amended complaints were not filed are: *Tolley et al. v. Monsanto Co. et al.*, No. 3:08-cv-01305, and *Brewer v. Monsanto  Co. et al.*, No. 3:08-cv-1306.

1442(a)(1).  The defendants argue that removal is appropriate under this provision because Monsanto produced 2, 4, 5-T under "federal direction and control" and can assert "federal defenses sufficient for removal."  (Notice Removal 5-6.)  The defendants also assert that this court has original jurisdiction under § 1331 because the "[Plaintiffs'] right to relief necessarily depends on resolution of a substantial question of federal law."  (*Id.* (quoting *Christianson v. Colt Indus.,* 486 U.S. 800, 808 (1988) (internal quotations omitted) (alteration in original).)  Finally, the defendants argue that removal of these cases is timely because the Plaintiffs revealed a new theory of the case on October 31, 2008 that "render[ed] this litigation (and the Parallel Litigations) ripe for removal." (Notice Removal 3, 8.)

On that same day, the defendants asked the Judicial Panel on Multidistrict Litigation (the "MDL Panel") to transfer the Parallel Litigations, now removed to federal court, to the United States District Court for the Eastern District of New York for consolidated pretrial proceedings as part of *In re "Agent Orange" Product Liability Litigation*, MDL No. 381.  (Letter to District Judge, Tab B [Docket 6].)  Also on that day, defense counsel filed a letter-form motion[6] requesting that "no action be taken by the Court in these cases pending a transfer decision by the MDL Panel."  (Letter to District Judge.)

Between November 24 and December 1, 2008, the plaintiffs filed Motions to Remand in all of the Parallel Litigations.  In their motions, the Plaintiffs argue that the defendants' removal of the Parallel Litigations was untimely because the defendants were aware of the "new" theory of the case upon which the removal was premised long before October 31, 2008.  (Mot. Remand 2-7.)  They

---

[6]      In my Order filed on December 5, 2008, I indicated that the letter filed by the defendants on November 21, 2008 would be treated as a letter-form motion.  (Order, Dec. 5, 2008, at 4 [Docket 14]).

further argue that the defendants' argument asserting timely removal is frivolous and move for the recovery of attorneys' fees and costs. (*Id.* at 7-8.) Also between November 24 and December 2, 2008, the Plaintiffs filed Motions to Stay Transfer of this Case and Other "Parallel Litigations" Pending the Court's Consideration of Plaintiffs' Motion to Remand.

On December 5, 2008, I entered an order in which I recognized that "the removal of these cases imposes a tremendous burden on the plaintiffs and has significant implications for judicial economy." (Order, Dec. 5, 2008 at 4 [Docket 14].) Consequently, I ordered the parties to follow a shortened briefing schedule. (*Id.*) The parties followed the Order, and the three pending motions are now ripe. I will address each in turn.

## II. Defendants' Letter-Form Motion to Stay Proceedings

In the defendants' letter dated November 21, 2008, the defendants notified this court that they had requested the transfer of the Parallel Litigations to MDL No. 381 and also "request[ed] that no action be taken by the Court in these cases pending a transfer decision by the MDL Panel." (Letter to District Judge.) In support of their request, the defendants noted that, upon transfer, the cases "will have the benefit of the extensive discovery materials and prior pretrial proceedings in MDL No. 381" and also that most courts facing similar circumstances "have not taken any action prior to transfer." (*Id.*)

In response, the Plaintiffs argue that this court should not stay its proceedings because "the issues raised in the Plaintiffs' Motion for Remand are both uncomplicated and unique to the cases at bar. Thus, nothing would be gained by delaying consideration of these issues . . . ." (Pls.' Resp. Defs.' Letter-Form Mot. Stay 4 [Docket 13].) The Plaintiffs also relate the long history and

procedural progress of the Parallel Litigations in state court and argue that a transfer of the cases would "create an enormous hardship on the Plaintiffs."

The defendants reply by arguing that "the interests of judicial economy and efficiency are best served if this Court stays all proceedings and defers a decision on the Motions to Remand until the [MDL Panel] renders its transfer decision." (Defs.' Reply Letter-Form Motion Stay 4 [Docket 16].) They also observe that they are not aware of any district court that "has ever intervened to remand during the pendency of the [MDL Panel] proceedings." (*Id.* at 4.)

The pendency of transfer to MDL No. 381 proceeding does not limit the authority of this court to rule on the plaintiff's motion to remand. *See JPML R. 1.5*; *Gen. Elec. Co. v. Byrne*, 611 F.2d 670, 673 (7th Cir. 1979) ("The mere pendency of a motion to transfer before the Multidistrict Panel does not affect or suspend the jurisdiction of the transferor court, or limit its ability to act on matters properly before it."). The decision whether to grant a stay is within the inherent power of the court and is discretionary. *See Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). Although some courts have opted to rule on pending motions to remand prior to the MDL Panel's decision on transfer, *see, e.g.*, *Kantner v. Merck & Co., Inc.*, No. 1:04CV2044, 2005 WL 277688 (S.D. Ind. Jan. 26, 2005), others have chosen to grant a stay, even if a motion to remand has been filed. *See, e.g.*, *Gavitt v. Merck & Co., Inc.*, No. 2:08-cv-755, 2008 WL 4642782 (M.D. Fla. 2008). A stay is particularly appropriate "[i]f the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred, [because] judicial economy would be served by issuing the stay." *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001). Nevertheless, a motion to dismiss or to remand, if it "rais[es] issues unique to a particular case, may be particularly

appropriate for resolution before the [MDL] Panel acts on the motion to transfer." *Manual for Complex Litigation (Fourth)* § 20.131 at 221.

In considering the defendants' Motion to Stay, I must consider three factors including: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Meyers*, 143 F. Supp. 2d at 1049. First, I consider the interests of judicial economy. The issues involved in the pending Motion to Remand are unique because the parties dispute the timeliness of the removal, and the motion requires an evaluation of the specific papers and proceedings in the Parallel Litigations. Such an evaluation is not relevant to any other case in MDL No. 381. No judicial efficiencies will be achieved by reserving this question for adjudication in that forum.

Furthermore, a stay in the Parallel Litigation proceedings will significantly prejudice the Plaintiffs. Some of the Plaintiffs had been litigating the Parallel Litigations in state court for more than eight years when they were removed. *Bibb* and *Carter* were removed right before the scheduling of class notification and trial. A stay in this court's proceedings will delay the resolution of those class actions, and all of the Parallel Litigations, pending the MDL Panel's decision, and delay relief to the Plaintiffs, some of whom have been waiting for that relief for almost a decade. This prejudice outweighs any hardship that the defendants will suffer from being required to litigate the pending motion immediately before this court rather than later before the MDL Panel. I **FIND** that a stay of the proceedings in this court will not promote the interests of judicial economy and will prejudice the plaintiffs. I also **FIND** that the defendants' will not experience undue hardship if the proceedings are not stayed. Therefore, the defendants' Letter-Form Motion to Stay is **DENIED**.

**III. Plaintiffs' Motion to Remand**

The Plaintiffs argue that the removal of the Parallel Litigations was untimely.  They argue that under 28 U.S.C. § 1446, the defendants were required to remove the Parallel Litigations within thirty days after ascertaining grounds for removal.  They further assert that the defendants knew of grounds for federal officer removal under 28 U.S.C. § 1442 more than thirty days before they filed the notices of removal.  They therefore argue that the notices were untimely, and that all of the Parallel Litigations must be remanded.

**A. Procedure for Filing a Notice of Removal**

A defendant seeking to remove a case must file a notice of removal within thirty days of receiving the plaintiff's initial pleading.  28 U.S.C. § 1446(b).  The receipt of an initial pleading starts the thirty-day period, however, only where the initial pleading reveals a ground for removal. *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997).  Where details that would make a case removable are obscured, omitted, or misstated in an initial pleading, the thirty-day period begins to run when a defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b); *Lovern*, 121 F.3d at 162.  The burden of establishing that removal was timely is on the defendant.  *McPatter v. Sweitzer*, 401 F. Supp. 2d 468, 472 (M.D.N.C. 2005).

"The 'motion, order or other paper' requirement is broad enough to include any information received by the defendant, 'whether communicated in a formal or informal manner.'" *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996). This court has previously recognized that "the term 'other paper' has been construed to include, for example, requests for admissions, deposition testimony, settlement offers, answers to interrogatories, briefs, and product identification documents

given in discovery." *Roberts v. Anchor Packing Co.*, Case No. 2:05-cv-320, 2005 WL 1201212, at *1 (S.D. W. Va. May 19, 2005) (Goodwin, J.); *see also* 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3732 (3d ed. 1998) ("Various discovery documents such as depositions, answers to interrogatories and requests for admissions, amendments to ad damnum clauses of the pleadings, and correspondence between the parties and their attorneys or between the attorneys usually are accepted as 'other paper' sources that initiate a new thirty-day period of removability.").

In determining whether the grounds for removal were ascertainable from a motion, order or other paper, a court must not inquire into the subjective knowledge of the defendant. *Lovern*, 121 F.3d at 163. Instead, the court must "rely on the face of the initial pleading and on the documents exchanged in the case by the parties . . . [and] requir[e] that those grounds be apparent within the four corners of the initial pleading or subsequent paper." *Id.* When removal is based on a defendant's status as a federal officer pursuant to 28 U.S.C. § 1442, the thirty-day period is only triggered if the paper "contains unequivocal facts that alert the defendant to a claim of federal officer jurisdiction." *In re MTBE Products Liability Litig.*, 399 F. Supp. 2d 356, 365 (S.D.N.Y. 2005).

A defendant does not have an affirmative duty to "scrutinize" a complaint in search of grounds for removal. *Shonk Land Co., LLC v. Ark Land Co.*, 170 F. Supp. 2d 660, 662 (S.D. W. Va. 2001). Nevertheless, a defendant may be on notice of grounds for removal, even if the plaintiff's complaint is "vague." *See Scott v. Grennier*, 858 F. Supp. 607, 610 (S. D. W. Va. 1994); *see also Shonk Land Co.*, 170 F. Supp. 2d at 663 (explaining that the thirty-day clock for removal began to run upon receipt of a complaint that provides a "clue" to removability). Moreover, a court should not allow "the extension of the removal period in the case where the initial pleading does not state

the factual or legal bases for removal" and the defendant uses the absence of such bases "to cover strategic delay interposed . . . in an effort to determine the state court's receptivity to his litigating position." *Lovern*, 121 F.3d at 163; *Shonk Land Co.*, 170 F. Supp. 2d at 662.

It is undisputed that the defendants removed the Parallel Litigations to this court more than thirty days after receiving the initial pleadings in those cases.[7]  The defendants argue, however, that on October 31, 2008, they received the plaintiffs' Response in Opposition to the Rule 16 Motion ("Response in Opposition"), an "other paper" revealing a "new theory" of the plaintiffs' case that rendered the Parallel Litigations ripe for removal.  (Notice Removal 2-3.)  The Response in Opposition allegedly showed, for the first time, that the plaintiffs were intending to "emphasize production-related injuries," rather than just "disposal-related" injuries.  (*Id.* at 2.)  Because the defendants *produced* 2, 4, 5-T "under the aegis of the federal government and as a federal officer for the production of military herbicides," the plaintiffs' revelation that they would pursue this theory suddenly rendered the cases removable.[8]  (*Id.* at 3.)

---

[7]   The defendants removed the Parallel Litigations to federal court more than eight years after *Carter* was filed, more than four years after *Bibb* was filed, and more than one year after the fifty-three individual cases were filed, all in the Circuit Court of Putnam County, West Virginia.

[8]   The plaintiffs have argued that the defendants make merely a semantic distinction between 2, 4, 5-T *production* and *disposal*.  (Pls.' Mem. Supp. Mot. Remand 3 n.3.)  Other courts, however, evaluating federal officer removal under § 1442(a)(1) have found the distinction significant for the purposes of determining whether a defendant was acting under federal control. *See N.J. Dep't of Envtl Prot. v. Exxon Mobil Corp.*, 381 F. Supp. 2d 398, 404-05 (D.N.J. 2005). Moreover, the plaintiffs have not presented any evidence that the federal government controlled Monsanto's 2, 4, 5-T disposal practices in the instant matter.  Nor have they identified any cases where other courts have reached that conclusion in similar situations.  Instead, they focus their remand argument on the theory that the defendants had notice of the production-based claims more than thirty days before the removal.  In the absence of argument or evidence that I should consider notice of the disposal-based claims as grounds for § 1442 removal, I will address the narrow question of when the defendants first had notice of production-based claims.

-23-

The defendants explain that the complaints in the Parallel Litigations did not demonstrate grounds for removal because complaints must "reveal[] . . . that the specific activities alleged to have proximately caused Plaintiff's injuries were the very activities directed by the federal government." (Defs.' Opp. Pls.' Mot. Remand 13.)  According to the defendants, the Complaint only "recites" that production occurred and does not allege that the "production activities are the direct and proximate cause of the injuries alleged."  (*Id.*)  The Plaintiffs argue that the complaints did allege injuries based on 2, 4, 5-T production.  (Pls.' Mem. Supp. Mot. Remand 6-7).  To resolve this question, I will examine the complaints from the Parallel Litigations to determine whether they notified the defendants of grounds for federal officer jurisdiction.

### B. *Carter* Litigation

The *Carter* plaintiffs filed their Fourth Amended Complaint (hereinafter, "*Carter* Complaint") in the Circuit Court of Putnam County on July 31, 2006.  That Complaint indicates that the alleged injuries stemmed from Monsanto's disposal of chemical waste from the Nitro Plant.  The first indication appears where the *Carter* plaintiffs allege that: "At all relevant times, the defendants each had ownership, possession control and/or the right to control of the dump sites identified herein." (Notice Removal, Ex. 1 ¶ 4.)  The *Carter* Complaint discusses 2, 4, 5-T production for the purpose of explaining the source of "wastes contaminated with dioxin" and alleging that the Defendant Monsanto's continued use of a production process that produced dioxins "in spite of available technology that would have eliminated and/or greatly reduced the generation of waste dioxin in its manufacturing process."  (*Id.* ¶ 9.)  The *Carter* plaintiffs then allege that: "[D]espite its knowledge of the health hazards posed by dioxin, Monsanto began disposing of and/or arranging for the disposal of large quantities of waste material contaminated with its dioxin . . . at various

locations, including the Manila Creek Dump site . . . ." (*Id.* ¶ 10.) Next, the plaintiffs allege that: "From the 1950s into the 1980s, Monsanto failed to advise local residents that it had dumped large quantities of dioxin and other chemicals it knew to be hazardous at [the Manila Creek dump site]." (*Id.* ¶ 11.) The next several paragraphs discuss the contamination at the Manila Creek site and the offsite dioxin contamination, including surface water and property contamination, caused by the waste at the Manila Creek site. (*Id.* ¶¶ 14-19.) The rest of the Complaint asserts claims based on this contamination.

The injuries alleged in the *Carter* Complaint clearly stem from Monsanto's *disposal* of dioxin contaminated waste at the Manila Creek site and the subsequent leaching of dioxin into neighboring waterways and property. The *Carter* plaintiffs did not allege any injuries based on the 2, 4, 5-T production process itself. I **FIND** that the *Carter* Complaint did not provide the defendants with grounds for § 1442 federal officer removal.

### C. *Bibb* Litigation

The *Bibb* plaintiffs filed their Class Action Complaint (hereinafter, "*Bibb* Complaint") on December 16, 2004. (*Bibb* Notice Removal, Ex. 1, Class Action Complaint.)[9] The differences between the *Bibb* Complaint and the *Carter* Complaint are striking. Though the *Bibb* plaintiffs also assert claims based on contamination from dioxins/furans produced at the Nitro Plant (*Bibb* Complaint ¶ 3), they clearly state that their "claims arise from [Monsanto's] production of the . . . dioxins/furans contaminated herbicide 2, 4, 5-T at . . . [the Nitro Plant] during the period 1949 through approximately 1971." (*Bibb* Complaint ¶ 8.) The emphasis on *production* as the cause of injury persists throughout many paragraphs. For example:

---

[9]   Hereinafter cited as "*Bibb* Complaint."

17. . . . Plaintiffs complain that the defendants have caused the inside of their homes and their real property to be contaminated with dioxin/furans generated by the defendants' contaminated 2, 4, 5-T process at the Nitro plant.

. . . .

44. From 1949 until 1971, [Monsanto] produced 2, 4, 5-T on a continuous basis in its [Nitro Plant]. Each and every ounce and each and every molecule of this product had associated with its contaminants the aforesaid dioxins/furans.

. . . .

46. The production of dioxin contaminated 2, 4, 5-T continued 7 days a week 365 days a year from 1949 to approximately 1971 at the [Nitro Plant]. During this entire time period, dioxin contaminated dust was released to the atmosphere by [Monsanto] where it was carried by prevailing winds over the town of Nitro, surrounding communities and the plaintiffs' homes and businesses.

(*Bibb* Complaint ¶¶ 17, 44, 46.)

The *Bibb* Complaint does go on to discuss offsite dioxin/furan contamination caused by dump sites and the Nitro Plant site itself, which was dismantled and buried in 1972. (*Bibb* Complaint ¶¶ 47-50.) In presenting the class allegations, however, the plaintiffs again emphasize the continuous and collective contamination caused by Monsanto's activities. For example:

105. For the purposes of identifying the plaintiffs at risk for contamination, the plant site, due to the prevailing winds and natural topography, is located at the center of a wind and topographically defined arc within which the deposition of contaminated dust and fumes escaping at all relevant times from the plant property fell upon and otherwise entered and contaminated plaintiffs' real estate . . . .

. . . .

107. Defendant's operation of the 2, 4, 5-T process and other related processes from approximately 1949 to 1971 caused the neighborhoods in the vicinity of the plant to become contaminated with the aforesaid dioxins/furans during that time period. . . .

108. As a consequence of the operation of the 2, 4, 5-T process, the plant site and adjacent real estate became heavily contaminated with dioxins/furans.

. . . .

-26-

151. Since 1949 [the defendants] . . . created and maintained a nuisance on the [Nitro Plant], to wit: the defendants through their manufacturing processes caused to be created the aforesaid dioxins/furans.

. . . .

153.   Because the defendants knew or should have known that their conduct in producing the aforesaid dioxins/furans and causing them to escape the Nitro Plant site was causing a substantial and unreasonable interference with the [plaintiffs'] interests in the use and safe enjoyment of their respective real estate, the defendants' conduct . . . constitutes an intentional and actionable nuisance.

. . . .

163.  . . . [T]he production of dioxin is an abnormally dangerous activity . . . .

. . . .

166. Because the defendants created an abnormally dangerous condition and because the defendants engaged in an abnormally dangerous activity, the defendants are strictly liable to the [plaintiffs] for any harm and injury proximately caused by the abnormally dangerous dioxins/furans.

(*Bibb* Complaint ¶¶ 105, 107, 108, 151, 153, 163, 166.)

These paragraphs show a breadth of claims much wider than those alleged in *Carter*, and further, implicate the defendants' activities other than the waste disposal.  Paragraphs 107 and 108, indicate that the plaintiffs are alleging claims for injuries caused by multiple Nitro Plant processes, rather than only waste disposal processes.   Paragraphs 153 and 166 explicitly allege the manufacturing and production process to be the sources of the defendants' liability.

A plain reading of the *Bibb* Complaint shows that the collective and continuous operation of the Nitro Plant in producing  2, 4, 5-T, including production, disposal, and any other process that was part of the plant operation, led to the emission of the dioxins/furans that allegedly caused the plaintiffs injuries.  It is unequivocal that the plaintiffs' claims include those based on production processes controlled by the federal government.  There is no indication in the *Bibb* Complaint that

-27-

the plaintiffs' claims were limited to injuries caused by damages related to Monsanto's waste disposal practices.  At worst the Complaint was "vague" about the specific activity causing the emissions.  But even so, it provided at least some "clue" that the plaintiffs were asserting claims based on production and that the Parallel Litigations could be removed under 28 U.S.C. § 1442.  *See Shonk Land Co.*, 170 F. Supp. 2d at 663.  Identifying the production-based claims in this complaint hardly requires "divination," *(See* Defs.' Mem. Opp. Mot. Remand 12), nor even fastidious "scrutiny."  *See Shonk Land Co.*, 170 F. Supp. 2d at 662.  The claims are evident on the face of the Complaint.  *See Lovern*, 121 F.3d at 163.

The defendants try to excuse their superficial reading of the *Bibb* Complaint by arguing that their interpretation of the *Bibb* Complaint was informed by *Carter*.  They argue that *Carter* had already been in litigation for four years when *Bibb* was filed, and because *Carter* was focused on waste disposal practices, "[i]t was . . . reasonable for anyone reading the *Bibb* Complaint to assume that *Bibb*, like *Carter*, also was premised upon Monsanto's waste disposal practices." (Defs.' Mem. Opp. Pls.' Mot. Remand 14.)  This argument is unpersuasive.  First, grounds for removal are to be discerned from the four corners of a "paper," not based on any subjective assumptions.  *See Lovern*, 121 F.3d at 163.  Second, rather than raising the assumption that *Bibb* was the same as *Carter*, the differences between the *Bibb* and *Carter* Complaints should have given the defendants a "clue" that the *Bibb* claims were different and broader.

The defendants further argue that this court must construe 28 U.S.C. § 1442 broadly.  It is true that courts construe § 1442 more liberally than other removal statutes.  (Defs.' Mem. Opp. Pls.' Mot. Remand 7.)  Generally, courts should construe removal jurisdiction strictly because of the significant federalism concerns removal implicates. *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407

F.3d 255, 260 (4th Cir. 2005). Section 1442 removal, however, is construed "with sufficient breadth to effectuate its purpose." *Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325, 329 (D. Conn. 2008). Therefore, § 1442 should be construed broadly enough to provide a federal forum for federal officers and the litigation of federal defenses. *See State of N.C. v. Carr*, 386 F.2d 129, 131 (4th Cir. 1967). Doing so promotes the significant federal interest in protecting "federal officers from interference by hostile state courts." *Willingham v. Morgan*, 395 U.S. 402, 405 (1969).

A broad reading of § 1442 cannot save the defendants in this instance. Though it is unclear whether government contractors seeking removal under § 1442 benefit from the same broad statutory construction as federal officers, *see Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 191 n.3 (D. Mass. 2008), it is very clear that a defendant may not manipulate removal statutes to strategically delay litigation. *See Lovern*, 121 F.3d at 163. The state court proceedings for the Parallel Litigations, including the imminent trials in the class actions, suggest that such a strategy was in play here. Moreover, § 1446's time requirement is specifically designed to protect against such undue delays and the consequent waste of judicial resources. *Link Telecomm., Inc. v. Sapperstein et al.*, 119 F. Supp. 2d 536, 541 (D. Md. 2000). In these circumstances, I cannot give § 1442 such a broad reading as to undermine the fundamental principles of fair and timely removal. Accordingly, I **FIND** that the *Bibb* Complaint provided the defendants with notice of grounds for § 1442 federal officer removal.

### D. Individual Litigations

In all but two of the Individual Litigations the amended complaints (collectively, "Amended Individual Complaints") are identical and closely resemble the *Bibb* Complaint. The complaints in the two Individual Litigations that did not file amended complaints are also very similar. For

simplicity, I will only discuss the contents of the Amended Individual Complaints, but I am satisfied that the same conclusion applies to all of the Individual Litigations.

Paragraphs 34 and 36 of the Individual Complaints repeat paragraphs 44 and 46 of the *Bibb* Complaint verbatim.[10]  Notice of Removal, Ex. 1, *Tolley et al. v. Monstano Co. et al.*, No. 3:08-cv-1305 (S.D. W. Va. filed Nov. 21, 2008).  Paragraphs 104 and 106 of the Amended Individual Complaints essentially repeat paragraphs 163 and 166 of the *Bibb* Complaint in all material respects. *Id.*  In paragraph 87, the individual plaintiffs describe the sources of hazardous emissions.  In addition to the disposal of dioxin through open "pit" burning and direct dumping into the Kanawha River, the plaintiffs allege that "the manufacturing process itself was dusty and [Monsanto's] dust control was haphazard."  *Id.*  This statement explicitly implicates the production of 2, 4, 5-T.  For the reasons above, and for the reasons discussed with respect to the *Bibb* Complaint, I **FIND** that the complaints in the Individual Litigations provided the defendants with notice of grounds for § 1442 federal officer removal.

### E. *Bibb* and the Individual Litigations are Remanded, but *Carter* is Not Remanded

Because I find that the complaints in *Bibb* and the Individual Litigations provided the defendants with notice of grounds for federal officer removal under 28 § 1442, and because that notice was received more than thirty days before the defendants filed their notices of removal, I **FIND** that the notices of removal in those cases were untimely.  Accordingly, *Bibb* and the Individual Litigations are **REMANDED** to the Circuit Court of Putnam County, West Virginia.

---

[10]     Paragraph 36 of the Amended Individual Complaints contains additional language addressing harm caused by burned waste.

*Carter* presents a more difficult matter.  Because the *Carter* Complaint did not provide the defendants with notice of grounds for removal, I must determine whether the defendants received an other "paper" providing such notice.  All of the papers submitted by the Plaintiffs as providing notice of grounds for federal officer removal were papers produced in connection with the *Bibb* litigation.[11]  The interconnectedness of the Parallel Litigations is obvious, and I can imagine that the litigations resulted in overlapping discovery, and that the parties often discussed these cases in tandem.  But neither party has presented any authority stating that a "paper" received in one litigation can serve notice of grounds for removal in a separate litigation.  I am especially reluctant to recognize such cross-litigation notice because the claims alleged in the *Carter* Complaint were distinct from the claims in the other Parallel Litigations.  Therefore, I will not consider papers filed in *Bibb* as papers that could provide notice of removal and trigger the thirty-day time period in *Carter* unless I find that the parties acknowledged an interrelationship of the two cases that would allow such notice.

The earliest record submitted by the parties in which the Plaintiffs acknowledged an overlap between the *Carter* and *Bibb* litigations is the Plaintiffs' Rule 16 Pretrial Submission, filed in the

---

[11]     These include the Plaintiffs' Requests for Admissions to Defendant Monsanto Company (Mot. Remand, Ex. 1), Deposition of Robert J. Pape (Pls.' Reply Mot. Remand, Ex. A [Docket 22]), Deposition of Herschell Everett Winter (Pls. Reply Mot. Remand, Ex. B), and Deposition of Curtis Winter (Pls.' Reply Mot. Remand, Ex. C).  The Plaintiffs also submitted the Report of Mr. Ray K. Forrester, who was an expert for the defendants.  (Mot. Remand, Ex. B.)  It is unclear whether Mr. Forrester's report was submitted in connection with *Bibb*, *Carter*, or several of the Parallel Litigations.  In any case, for the purposes of § 1446, an "'amended pleading, motion, order to [sic] other paper' must emanate from either the voluntary act of the plaintiff in the state court, or other acts or events not the product of the removing defendant's activity." *Potter v. Carvel Stores of N.Y., Inc.*, 203 F. Supp. 462, 467 (D. Md. 1962) (quoting 28 U.S.C. § 1446(b)), *aff'd*, 314 F.2d 45 (4th Cir. 1963).  Because the new "paper" providing notice of grounds for removal must stem from the Plaintiffs' initiative, the report of the defendants' expert does not trigger the thirty-day removal period under § 1446, and I will not discuss that document further.

-31-

Circuit Court of Putnam County on November 3, 2008, as part of the proceedings in *Bibb*.  (Notice

Removal, Ex. 2)  In that document, Plaintiffs' counsel explains his intention to move for dismissal

of *Carter* because "the *Carter* class members are also members of the *Bibb* class [and t]he relief

sought for members of the *Carter* class, with the exception of perhaps the riparian rights claim, is

[sic] same relief sought in the *Bibb* action."  (*Id.* at 1.)  At that point, the defendants may have been

on notice that any claims in the *Bibb* litigation would also be relevant to the *Carter* litigation,

including the production-based claims.  This notification, however, occurred less than thirty days

before the defendants removed the case.  Based on this record, I **FIND** that the defendants first

received a paper from which they could ascertain the removability of *Carter* on November 3, 2008.

Accordingly, I **FIND** that the defendants' removal of *Carter* was timely.  The plaintiffs' Motion to

Remand *Carter* is **DENIED**.

## IV. Plaintiffs' Motion to Stay Transfer

The plaintiffs have conceded that their Motion to Stay Transfer has been superseded by their

Response to the defendant's Letter-Form Motion dated November 21, 2008.  (Pls.' Reply Mot. Stay

Transfer 1.)  Because of that concession, and because this court does not have authority to prevent

the transfer of these cases to MDL No. 381, the motion is **DENIED as moot**.

## V.  Defendants' Removal Does Not Warrant The Imposition Of Fees And Costs

The Plaintiffs assert that the defendants' claim of timely removal is frivolous and therefore

an award of attorney fees and costs upon remand is warranted.  (Mot. Remand 7.)  Given the volume

and complexity of these cases, and having found that *Carter* was timely removed, I cannot find that

the defendant "lacked an objective, reasonable basis for their removal."  *Martin v. Franklin Capital*

*Corp.*, 546 U.S. 132, 141 (2005).  The Plaintiffs' motion to recover costs and attorneys fees is **DENIED**.

## V. Conclusion

For the reasons set forth above, the defendants' Letter-Form Motion to Stay is **DENIED** [Docket 6], the Plaintiffs' Motion to Stay Transfer of this Case and Other "Parallel Litigations" Pending the Court's Consideration of Plaintiff's Motion to Remand is **DENIED as moot** [Docket 7], and the Plaintiffs' Motion to Remand Due to Untimely Removal and to Recover Costs and Attorneys Fees is **GRANTED in part** and **DENIED in part** [Docket 9].  The Motion to Remand is **GRANTED** to the extent that the *Bibb* litigation and the Individual Litigations are **REMANDED**. It is **DENIED** to the extent that the *Carter* litigation is not remanded and that costs and attorneys' fees are not awarded.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.  The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:        December 19, 2008

Joseph R. Goodwin, Chief Judge